UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KATHERINE HEAD, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br>v.<br><br>GENERAL MOTORS LLC; and DOES 1 through 25, inclusive,<br><br>        Defendants. | CASE NO. |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff KATHERINE HEAD (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of the facts pertaining to herself, and upon information and belief as to all other matters alleged, brings this Class Action Complaint against Defendant GENERAL MOTORS LLC ("GM" or "Defendant") and alleges as follows.

## I.

## NATURE OF THE ACTION

1.      Since shortly after commencing manufacture of 2010-2013 model year Cadillac SRX vehicles (the "Class Vehicles") Defendant has had actual knowledge the sunroofs leak causing water to intrude into the passenger compartment of the

1

vehicles because of a defect in the design and/or manufacture of the sunroofs and their component parts (hereinafter "Leaking Sunroof Defect"). The water intrusion causes water damage to electronic components of the Class Vehicles and creates safety concerns by damaging wiring and electrical modules, including but not limited to the sensing and diagnostic module (SDM) and the SDM harness connector (which control the safe operation and deployment of the vehicle's air bag system) resulting in Class Vehicles and their important electronic component parts not operating properly and creating a known safety hazard that can result in personal injuries.

2.     Defendant GM has long recognized that "if any water enters the [Class Vehicles'] interior up to the level of the carpet or higher and soaks the carpet, the sensing and diagnostic module (SDM) and the SDM harness connector may need to be replaced. The SDM could be activated when powered, which could cause deployment of the air bag(s) [a.k.a., the SIR "supplemental inflatable restraint" system] *and result in personal injury*." See, Exhibit 1 attached hereto and incorporated by this reference (2013 Cadillac Truck SRX FWD V6-3.6L, General Motors Service Precautions, Technician Safety Information bulletin) (italics added). The technician safety bulletin warns that "failure to follow these tasks could result in possible air bag deployment, personal injury, or otherwise unneeded SIR system repairs." *Id.*

2

3.     In addition to compromising proper and safe operation of the air bag system, when the SDM gets wet because of the Leaking Sunroof Defect the water intrusion also compromises and impairs proper functioning of the Class Vehicles' CUE central processing unit that controls such functions as the vehicle's OnStar safety system, navigation function, and communication functions.  For example, when the CUE system's wiring gets wet the OnStar system will either automatically call OnStar or worse not work at all resulting in disabling the vehicle's ability to contact OnStar including in the event of a crash or when the vehicle has become disabled in a situation requiring roadside assistance.  Other functions of the CUE system rendered inoperable or damaged by water intrusion include the vehicle's navigation system, including its Turn-by-Turn directions, Automatic Crash Notification, hands-free calling and OnStar RemoteLink mobile application.

4.     Water damage to the vehicle's electrical system caused by the Leaking Sunroof Defect also causes the vehicle's electric exterior mirrors to not operate properly thereby preventing the driver from being able to adjust their outside mirrors safely which prevents drivers from being able to see other vehicles or hazards when changing lanes or backing up.

5.     The intrusion of water into the passenger compartment caused by the Leaking Sunroof Defect also results in foreseeable and anticipated property damage

to Class Vehicles including water saturated and/or moldy carpet and saturation of the sound deadener (the fabric-based material installed in the floorboards to reduce interior road noise) which required repair or replacement and/or cleaning and disinfecting of the vehicles.  Wet and moldy carpet from the Leaking Sunroof Defect results in mold and/or fungi spawning and growing inside the passenger compartment of Class Vehicles which infects the breathable air of inside the passenger compartment of the vehicle exposing those with allergies and/or respiratory problems or sensitivities to adverse health consequences and/or problems.

6.     Defendant GM has long known about the Leaking Sunroof Defect and that Class Vehicles are defective in their design and/or manufacture.  Despite this knowledge Defendant actively concealed, refused and/or failed to disclose the existence of this defect to Plaintiff, members of the class, and the public who were considering purchasing or did purchase a new or pre-owned Class Vehicle which was still covered by the original GM manufacturer's warranty period (4 years/50,000 miles).

7.     Plaintiff brings this action for herself and on behalf of all persons wherever located in the United States, or at minimum in the state of Illinois, who purchased or leased new or pre-owed model year 2010 - 2013 Cadillac SRX vehicles

4

with defective sunroof design, materials, and/or workmanship which were manufactured, distributed, warranted, and/or sold by Defendant.

8.     As a result of Defendant's alleged misconduct Plaintiff and the class members were harmed and suffered actual harm and damages in that they purchased Class Vehicles which they would not otherwise have purchased had they known the material fact the vehicle they were considering and did purchase were within the class of vehicles that suffered from the Leaking Sunroof Defect, or they paid more for Class Vehicles than they were worth given the existence of the Leaking Sunroof Defect, and/or they parted with their own money for inspection, diagnoses and/or repairs caused by the Leaking Sunroof Defect.

9.     Plaintiff is informed, believe and thereon alleges that beginning with model year 2014, Defendant GM corrected the design, manufacture and/or component parts of the vehicle's sunroof so as to cure the Leaking Sunroof Defect; thus it may be reasonably inferred the design, materials, component parts, and/or manufacture of the sunroofs on 2010-2013 model year vehicles is/are defective in materials and/or workmanship and were not suitable in Class Vehicles.

10.     Plaintiff alleges Defendant provided an express 48-month (4-year)/50,000 mile Bumper-to-Bumper Limited Warranty with no deductible which covered all Class Vehicles whether purchased new or pre-owned.  Plaintiff alleges

5

the "Bumper-to-Bumper Limited Warranty" covers vehicles registered in the U.S. and Canada from the date the vehicle is first delivered until it reaches 4 years or 50,000 miles (whichever occurs first). Defendant's express warranty covers the vehicle from bumper to bumper on any vehicle defect related to materials or workmanship.

11. Plaintiff alleges Defendant also provided an express warranty for the model year 2011-2013 Class Vehicles which Defendant calls "Cadillac Shield." Defendant makes the following advertisement and/or representation about its Cadillac Shield express warranty:

> "At Cadillac, we believe our owners deserve it all. That's why every 2011 or newer vehicle is backed by Cadillac Shield, the most comprehensive suite of owner benefits by any luxury automotive brand in the world. From innovations like Remote Vehicle Diagnostics and advanced mobile apps to our Premium Care Maintenance program, Cadillac Shield gives luxury owners everything they need."

12. The express "Bumper-to-Bumper Limited Warranty" offered by Defendant and its "Cadillac Shield" warranty constitute contracts between Defendant and the consumers, including Plaintiff and the class members, who purchased or leased a new or used Class Vehicles while still under warranty. Privity thus exists between Plaintiff and the class members on the one hand and Defendant on the other with respect to Defendant's express warranties.

13.     In or about August 30, 2013, before Plaintiff purchased her 2013 SRX vehicle, and within the initial Bumper-to-Bumper Limited Warranty period of all Class Vehicles, Defendant GM recognized the Leaking Sunroof Defect caused water to leak in the driver or passenger floor area and/or cause the front carpet to get wet. In response Defendant issued only to its dealerships and service centers General Motors Document ID: 3610923, #PI0044D "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013)," which guided repair technicians in identifying the Leaking Sunroof Defect and how to repair it.  See, Exhibit 2 attached to this Class Action Complaint and incorporated herein. Defendant specified that such "GM bulletins are intended for use by professional technicians, NOT a 'do-it-yourselfer'." *Id.*

14.     Defendant therefore intended the Leaking Sunroof Defect is not to be repaired and/or replaced by anyone other than a professional technician thus requiring consumers to bring their vehicles to a service center for inspection and/or repair of damage caused by the defect.

15.     Defendants Service Bulletin (Exhibit 2) also specifies one known identifiable cause of the Leaking Sunroof Defect is "there may be a void in the cowl seam sealer, in the corners of below the sunroof drain hose grommets." *Id.*  A void in the cowl seam sealer was the cause of the Leaking Sunroof Defect in Plaintiff's

vehicle thus Plaintiff's vehicle suffered from the Leaking Sunroof Defect.

16.     Less than a month after issuing Exhibit 4, in September 2013, also within the initial Bumper-to-Bumper Limited Warranty period of the Class Vehicles, Defendant issued only to its dealerships and service centers a second Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, which provided revised and updated information relating to the Leaking Sunroof Defect and the condition/concern and recommendations/instructions for testing and repairing the Leaking Sunroof Defect.  Attached hereto as Exhibit 3 and incorporated herein is a copy of SB-10052823-4367, Bulletin No. PI0044D.

17.     Based on its own Service Bulletins Plaintiff alleges Defendant GM had actual knowledge and notice, or in the exercise of reasonable care should have known, during the original warranty period covering the Class Vehicles, of the existence and nature, cause, consequences and correction for the Leaking Sunroof Defect.

18.     The Leaking Sunroof Defect inhibited Plaintiff's and the class members' enjoyment and safe use of their vehicles as well as the proper and safe use of their vehicle's sunroof by failing to keep water out of the interior passenger compartment of the Class Vehicles.  The Leaking Sunroof Defect also presents a significant safety hazard in that it can and does result in damage to the vehicle's air bag SDM module,

CUE system and interior components, including wiring and electronic modules.

19.     Plaintiff and the class members continue to be harmed and suffer actual damages in that Class Vehicles have manifested, and continue to experience the Leaking Sunroof Defect.  Defendant GM has refused and continues to refuse to cover the cost to repair damages caused by the Leaking Sunroof Defect when it manifests itself in Class Vehicles despite Defendant's actual knowledge the defect exists and has existed in Class Vehicles since their original manufacture and since they were first placed on the market.

20.     Plaintiff and the class members have incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to inspecting, repairing, replacing and/or cleaning vehicles caused by the Leaking Sunroof Defect.

21.     Plaintiff alleges Defendant made a conscious and purposeful decision to conceal from purchasers the existence of the Leaking Sunroof Defect and then deny and/or refuse to provide warranty coverage for the Leaking Sunroof Defect instead forcing consumers to pay from their own pockets for the costs of inspection and for parts and/or labor to repair the Leaking Sunroof Defect and/or clean their damaged vehicles.  Plaintiff alleges Defendant engaged in these acts and conduct for the purpose of saving its own money and for its own selfish financial and economic gain to the financial detriment of its customers and despite its actual knowledge of

the existence of the Leaking Sunroof Defect in the Class Vehicles.  Plaintiff alleges Defendant's conduct and actions as herein alleged were done with a knowing, conscious, purposeful, willful, malicious and/or oppressive disregard for the rights and/or safety of Plaintiffs and the class members.

22.     Plaintiff alleges Defendant has failed to take reasonable measures to communicate to owners of Class Vehicles the existence of the Leaking Sunroof Defect, the significant safety hazard posed by the defect in the malfunction or the vehicle's air bag and CUE systems, and damage the defect foreseeably causes despite the reasonable expectation of all consumers that a properly designed and working and/or properly manufactured sunroof would not cause water to intrude into their vehicles and cause damage to and rendering inoperable electronic components and safety features of the Class Vehicles.

23.     Given the Leaking Sunroof Defect is known or anticipated by Defendant to present a safety hazard to Class Vehicles in that the defect can result in damage to the vehicle's interior components, including the air bag and CUE systems, wiring and electronic modules, as herein alleged, a recall should have been issued for the Class Vehicles.

24.     Plaintiff alleges the reasonable consumer and purchaser of a Class Vehicle, whether new or pre-owned and still under Defendant's original warranty,

would consider material the information known to Defendant about the Leaking

Sunroof Defect.

25.    Plaintiff is informed and allege Defendant delivered the following

number of 2010-2013 Cadillac SRX vehicles with the Leaking Sunroof Defect:

| Model Year: | Number of Cadillac SRX Vehicles: |
|---|---|
| 2010 | 51,094 |
| 2011 | 56,905 |
| 2012 | 57,485 |
| 2013 | 56,776 |
| Total: | 222,260 |

26.    Defendant GM owns, operates and/or manages Cadillac Motor Car

Division which is a division of Defendant GENERAL MOTORS LLC.

## II.

## JURISDICTION AND VENUE

27.    This Court has jurisdiction over Plaintiffs' claims pursuant to 28

U.S.C.§1332(d) because: (a) this action is brought as a proposed class action under

Fed. R. Civ. Pro., Rule 23 (a) and (b) because the proposed Class(es) include(s) more

than 100 members; and Fed. R. Civ. Pro., Rule 23 (c) because many of the proposed

Class members are citizens of states which are diverse from Defendant's citizenship.

28.    Venue is proper in this judicial district under 28 U.S.C. §1391(b)(1)

because Defendant GM's principal place of business and corporate headquarters

and corporate nerve center is located in Detroit, Michigan.

## III.

## THE PARTIES

### A.     Plaintiff KATHERINE HEAD

29.     Plaintiff KATHERINE HEAD ("Plaintiff") resides in the state of Illinois. Plaintiff owns a model year 2013 Cadillac SRX which she purchased pre-owed while the vehicle was still covered by Defendant's original manufacturer's Bumper-to-Bumper warranty and the Cadillac Shield warranty.

30.     Plaintiff's vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Defendant and bears Vehicle Identification No. 3GYFNEE3XDS602232 ("VIN").   Plaintiff's vehicle was first purchased by a consumer on or about 6/13/2013.

31.     On or about 12/17/2016, Plaintiff purchased her 2013 Cadillac SRX vehicle primarily for her personal, family, and household use.   When Plaintiff purchased her vehicle it was pre-owned and had no more than approximately 33,305 original miles.   At the time Plaintiff purchased her SRX vehicle it was therefore still within the time period of Defendant GM's original manufacturer's warranty of 4 years or 50,000 miles, as alleged herein.   At the time Plaintiff purchased her SRX the vehicle was also still within the Cadillac Shield warranty period provided by Defendant GM, as herein alleged.

32.     On May 2020 Plaintiff experienced what she now knows was the Leaking Sunroof Defect when Plaintiff got into her vehicle and found water had intruded into the interior passenger compartment of her vehicle soaking the carpet and floorboards.  In addition, Plaintiff experienced that the vehicle's CUE system was malfunctioning including but not limited to the OnStar system not working properly, including experiencing that the OnStar system would automatically dial OnStar without Plaintiff's prompting it, or it would not work at all.  Plaintiff also experienced that the exterior electric mirrors were not working properly which prevented Plaintiff from being able to properly and safely adjust them so she could see vehicles in her "blind spots" along side or behind her vehicle as herein alleged.

33.     At no time prior to Plaintiff first experiencing the Leaking Sunroof Defect in May 2020, was Plaintiff made aware, told, notified or otherwise informed by Defendant GM that her SRX vehicle was subject of the Technical Bulletins relating to the Leaking Sunroof Defect and the safety issues it presents and damage it can cause despite the fact she purchased the vehicle in December 2016 and was its registered owner.

34.     Plaintiff further alleges that, at no time prior to Plaintiff purchasing her 2013 SRX vehicle did Defendant make aware, tell, notify or otherwise inform any of the service/repair shops where the vehicle had been previously serviced, including

13

but not limited to Grossinger City Chevrolet Cadillac in Chicago, Illinois, Fox Ford Lincoln Midwest in Chicago, Illinois, Cadillac of Naperville, Inc., in Naperville, Illinois, or AAMCO Transmission & Total Car Care of Lisle, Illinois that the vehicle was subject of Defendant's Technical Bulletin (Exhibit 1) and/or its Service Bulletins (Exhibits 2 and 3) relating to the existence of the Leaking Sunroof Defect, the safety issues it presents, and the damage it can cause.

35.    Had Plaintiff been informed, notified or otherwise made aware the 2013 SRX vehicle she was considering purchasing (and which was still under warranty) was subject to the Leaking Sunroof Defect and/or Defendant GM's Technical and Service Bulletins she would not have purchased the vehicle and would have looked at purchasing another vehicle.  Alternatively, Plaintiff would not have paid as much for the vehicle because vehicles with the Leaking Sunroof Defect are worth less than a vehicle which does not have a defect that costs thousands of dollars to inspect and repair.

36.    Had Plaintiff been informed, notified or otherwise made aware by Defendant, after she purchased the vehicle in December 2016, and before experiencing the Leaking Sunroof Defect in May 2020, of the fact her vehicle was subject to the Leaking Sunroof Defect and/or Defendant GM's Technical Bulletin and Service Bulletins, and the safety and damage risks the defect presents Plaintiff

14

would have taken the vehicle for inspection and/or repairs while the vehicle was still covered by Defendant's original warranty and Cadillac Shield program. Because Defendant never made any effort to contact, inform, or otherwise advise Plaintiff that her vehicle was subject to the Leaking Sunroof Defect, Plaintiff was deprived of the chance to avoid the damage to her vehicle and avoid incurring the costs of inspection and/or repair that would otherwise have been borne by Defendant under warranty.

37.     Plaintiff considers, and alleges all other reasonable consumers would also consider, information about the Leaking Sunroof Defect and the safety hazards it poses, the damage it causes as well as the costs that would be incurred to inspect and/or repair the defect material in the decision to purchase the vehicle in the first place, and/or whether to take their vehicle for inspection and/or repair of the defect before actually experiencing the water intrusion caused by the defect.

38.     The fact the 2013 SRX pre-owned vehicle Plaintiff was considering purchasing was still covered by Defendant GM's original 4-year/50,000 mile Bumper-to-Bumper warranty was material to her decision to purchase the vehicle.

39.     After experiencing (what Plaintiff now knows was) the Leaking Sunroof Defect, she took her vehicle to Gerber Collision & Glass in Downers Grove, Illinois about the water damage to her vehicle where they opened a repair order.  Upon

inspection of the vehicle it was discovered there were void(s) in the sunroof cowl seam sealer resulting in water intrusion into the interior of the vehicle.  Based on inspection the cause of the water intrusion into Plaintiff's vehicle was the Leaking Sunroof Defect as outlined, described and explained in Defendant GM's Technical and Service Bulletins attached hereto as Exhibits 1, 2 and 3, respectively.

40.    Furthermore, upon inspection of Plaintiff's vehicle it was noted the sensing and diagnostic module (SDM) and the SDM harness connector were sitting in water and exhibited signs of corrosion (which as described, *supra*, is the electronic module for the vehicle's air bag system), a Diagnostic Test Code and warning light for the vehicle's air bags (SIR) was illuminated/activated on the vehicle's dash panel, the front and rear carpet were saturated with water and there was mold growing in the carpet, and electrical fuses exhibited signs of corrosion from water damage.

41.    Plaintiff alleges the damage to her vehicle and the necessary repairs were caused by the Leaking Sunroof Defect.  Plaintiff was told the repairs and costs to repair the damage to her vehicle were not covered under warranty.

42.    The cost of repairs to Plaintiff's vehicle was quoted to be multiple thousands of dollars to repair all the damage caused by the Leaking Sunroof Defect as well as the defective cowls associated with the Leaking Sunroof Defect itself.

16

Plaintiff paid approximately $150 to Gerber Collision and Glass for the inspection. Plaintiff alleges she has therefore incurred actual harm and damages as a result of the Leaking Sunroof Defect.

**B.     Defendant GENERAL MOTORS LLC ("GM" or "Defendant")**

43.     Defendant GENERAL MOTORS LLC ("Defendant GM"), is a Delaware Corporation (Delaware Department of State, Division of Corporations Entity File No: 4692623) whose principal place of business and corporate nerve center is in Detroit, Michigan.

44.     At all times relevant herein, Defendant GM was engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and/or servicing Cadillac automobiles, including the Class Vehicles, and other Cadillac motor vehicles and motor vehicle components throughout the United States.

45.     Based on information and belief Plaintiff alleges Defendant GM is notified and maintains records of the names, addresses and telephone numbers, dates of purchase, and vehicle milage at the time of purchase for all vehicle owners, including purchasers of pre-owned vehicle which are still within Defendant's original 4-year/50,000 mile warranty.   Based thereon, Plaintiff alleges that Defendant GM at all times, including through the present, has and always had the

ability and capability to notify owners of Class Vehicles, including Plaintiff, of the fact their vehicles are subject of the Leaking Sunroof Defect and Service Bulletins covering the Leaking Sunroof Defect thereby giving those owners notice and opportunity to have their vehicles inspected for the causes of the Leaking Sunroof Defect and, if necessary, repaired so those owners could avoid the safety risks, costs and expenses associated with repairing damage caused by the Leaking Sunroof Defect.

## IV.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated as members of the proposed class/sub-classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

47.     Based on information presently available Plaintiffs seeks to certify a class or sub-class pursuant to Fed. R. Civ. Pro. 23(a) and (b)(3) defined as follows (the "Damages Class"):

> All current and former owners of 2010-2013 Cadillac SRX vehicles located in the United States and Canada who experienced the Leaking Sunroof Defect and were required to pay for inspection and/or repairs.

Excluded from the class/sub-class are: (1) Defendant and any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Magistrate, District Court Judge or other judicial officers to whom this case is assigned and their staff and immediate family; and (3) claims of personal injury by persons who may have suffered personal injuries as a result of the Leaking Sunroof Defect.

48.     Based on information presently available Plaintiffs seeks to certify a class pursuant to Fed. R. Civ. Pro. 23(a) and (b)(2) defined as follows (the "Injunctive Class"):

> All current and former owners of 2010-2013 Cadillac SRX vehicles located in the United States and Canada who purchased or leased a model year 2010-2013 Cadillac SRX vehicle for personal use and not for resale.

Excluded from the class/sub-class are: (1) Defendant and any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Magistrate, District Court Judge or other judicial officers to whom this case is assigned and their staff and immediate family; and (3) claims of personal injury by persons who may have suffered personal injuries as a result of the Leaking Sunroof Defect.

/ / /

/ / /

19

49.     Plaintiffs additionally seek to represent the following sub-class(es) (collectively, the "State Sub-Classes") initially defined as follows:

> All current and former owners of 2010-2013 Cadillac SRX vehicles residing in the State of Illinois who experienced the Leaking Sunroof Defect and were required to pay for inspection and/or repairs;

50.     Plaintiffs reserve the right to amend the class and/or subclass definitions if discovery and further investigation reveal the class/sub-class should be expanded, otherwise divided into subclasses, or modified in any other way.

**A.     Numerosity - Fed. R. Civ. Pro. 23(a)(1)**

51.     Although precise numbers are not available at the time of the filing of this Class Action Complaint, Plaintiffs allege the Class consists of more than 222,000 people.   Defendant delivered and sold or leased approximately 222,260 of the Cadillac SRX vehicles model years 2010-2013 ("Class Vehicles") throughout the United States and Canada.   Therefore, the potential members of the class as defined are so numerous and are dispersed throughout the United States such that joinder of all class members is impracticable.   Disposition of the claims of the class members in a single action will provide substantial benefits to all parties and to the Court.

**B.     Commonality and Predominance - Fed. R. Civ. Pro. 23(a)(2) and 23 (b)(3)**

52.     This action involves common questions of law and fact that predominate over any questions affecting individual class members, including:

a.      whether the Class Vehicles are defective;

b.      whether Defendant knew or should have known about the Leaking Sunroof Defect, and, if so, how long Defendant has known of the defect;

c.      whether Defendant omitted and/or refused or failed to disclose material facts about the standards, quality, and characteristics of the Class Vehicles in particular as it relates to the Leaking Sunroof Defect;

d.      whether Defendant's omissions and/or refusals or failures to disclose material facts regarding the standards, quality and characteristics of the Class Vehicles were likely to mislead reasonable consumers;

e.      whether Defendant's omissions and/or refusals or failures to disclose material facts that sunroofs on the Class Vehicles were defective in their design and/or manufacture in that they leaked and water intruded into the passenger compartment of the vehicle was a material fact that a reasonable consumer would be expected to rely on when deciding whether to purchase or lease a Class Vehicle;

f.      whether Plaintiffs and the other class members have been damaged and, if so, the extent of such damage; and

g.      whether Plaintiffs and the other class members are entitled to equitable relief, including but not limited to restitution and injunctive relief;

h.      whether Defendant should be ordered to make restitution to Plaintiff and the Class;

i.      whether Defendant breached its express and/or implied warranty(ies) covering the Class Vehicles with regard to the Leaking Sunroof defect;

53.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison in both quality and quantity, to the numerous common questions that dominate this action.

**C.    Typicality - Fed. R. Civ. Pro. 23(a)(3)**

54.     The claims of Plaintiff, as the representative plaintiff for members of the proposed class/sub-classes, are typical of the claims of the class in that the representative Plaintiffs, like all class members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Defendant.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all other class members, and no defense available to Defendant is unique to any one plaintiff.

55.     The representative Plaintiff, like all class members, has been damaged by Defendant's misconduct in that their vehicles suffer from the Leaking Sunroof

Defect and they have incurred and/or will incur out-of-pocket unreimbursed costs and expenses relating to repairing, replacing and/or cleaning vehicles caused by the Leaking Sunroof Defect and any other damage proximately caused by the Leaking Sunroof Defect.  Furthermore, the factual bases of Defendant's misconduct as herein alleged are common to Plaintiff and all class members and represent a common thread of misconduct resulting in injury to all class members.

### D.   Adequacy of Representation - Fed. R. Civ. Pro. 23(a)(4)

56.    Plaintiff and her counsel will fairly and adequately represent and protect the interests of the class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions and/or multi-party claims who will fairly and adequately represent and protect the interests of the class.

57.    Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of and for the benefit of the class and have the resources to do so. Neither Plaintiff nor her counsel have any interests adverse to those of the class.

### E.   Superiority - Fed. R. Civ. Pro. 23(b)(3)

58.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action.  The damages, harm or other financial detriment suffered individually by Plaintiff and the other class members are relatively small compared to the burden and expense that would be

required to litigate their claims on an individual basis against Defendant, making it impractical for class members to individually seek redress for Defendant's wrongful conduct.  Absent a class action, most class members would likely find the cost of litigating their individual claims prohibitively high based on the cost of repairs and/or diminution in value of the Class Vehicles and would therefore have no effective remedy at law.  Because of the relatively small size of the individual class members' claims, it is likely that only a few class members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, class members will continue to incur damages, and Defendant's misconduct will continue without remedy.

59.     Even if class members could afford individual litigation the court system should not be forced to bear such inefficiency.  Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system.

60.     Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment presents fewer difficulties in managing the litigation and provides the benefits of single adjudication of the controversy and judicial economies of scale, and supervision by a single court resulting in conservation of judicial resources.

## V.

## FIRST CAUSE OF ACTION
**(Violation of Illinois Consumer Fraud and Deceptive Practices Act)**
**[815 ILCS 505/2]**

61.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

62.     Plaintiff purchased her Cadillac SRX vehicle primarily for personal, family, or household purposes.

63.     The Illinois Consumer Fraud and Deceptive Practices Act "CFDPA") [815 ILS 505/2] declares unlawful unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact in the conduct of any trade or commerce.

64.     By engaging in the acts, conduct and business practices as alleged herein, Defendant violated the Illinois CFDPA.  Defendant engaged in unlawful, unfair and/or fraudulent business acts or practices by concealing from Plaintiff and all other purchasers of Class Vehicles during the Class Vehicles' original warranty period the existence of the Leaking Sunroof Defect and the fact water intrusion into the vehicle caused by the defect was known by Defendant to compromise the proper operation of the vehicle's SDM module resulting the risk of deployment of the

25

vehicle's air bag system which forseeably results in personal injury, as well as compromises proper function of the vehicle's CUE and OnStar safety system, and other damages to their vehicles.

65.    Based on Plaintiff's and all other Class Members' foreseeable exposure to personal injuries from deployment of the air bags caused by water damage to the EDM module, improper function of the vehicle's OnStar safety system, and mold growth in wet carpet and saturation of the sound deadener, all resulting from the Leaking Sunroof Defect, Defendant GM owed all purchasers of Class Vehicles, including Plaintiff, a duty to disclose the Leaking Sunroof Defect at the time of purchase or as soon thereafter when Defendant was in possession of vehicle registration information including the owner's name, address, telephone number, vehicle identification number (VIN), date of purchase or transfer of title, service history of the vehicle to confirm whether the vehicle had previously experienced the Leaking Sunroof Defect and/or been inspected and/or repaired, and the milage and existing warranty information for each Class Vehicle.

66.    Defendant had actual knowledge of the existence of the Leaking Sunroof Defect in Plaintiff's and the Class Members' vehicles as early as August 2013 - nearly three years before Plaintiff purchased her vehicle in December 2016 - and while the vehicle was still under the original warranty.

67.     Notwithstanding Defendant's actual knowledge the Leaking Sunroof Defect caused water intrusion into the passenger compartment of the Class Vehicles, including causing wet and/or saturated carpet, and Defendant also had actual knowledge that "if any water enters the vehicle up to the level of the carpet or higher and soaks the carpet" the SDM module which controls the vehicle's airbag system could be activated and cause deployment of the air bag(s) resulting in personal injury (see, Technician Bulletin Ex. 1) as well as damage to the vehicle's electronic components and modules (see, Service Bulletins Exs. 2 and 3), Defendant chose to conceal these material facts from Plaintiff and all other Class Members.

68.     Instead of disclosing the Leaking Sunroof Defect and informing Plaintiff and all other Class Members of the defect and the risk of personal injury caused by the defect, Defendant chose to sit back, take no action, cross its fingers, and wait for the original warranty period to expire so that Defendant would then have a plausible, even if morally reprehensible, reason to decline to cover under warranty the cost of inspection and/or repairs for damages caused by the Leaking Sunroof Defect.

69.     Defendant elected to engage in this practice in order to put its profits over the safety of its customers.

70.     Had Plaintiff been informed and/or made aware prior to May 2020 when she first experienced the Leaking Sunroof Defect that her vehicle was in the class of vehicles which were known to experience the Leaking Sunroof Defect, she would have either 1) not purchased the vehicle at all, 2) requested/demanded the vehicle be inspected and/or repaired before purchasing the vehicle, 3) had the vehicle inspected and/or repaired after purchasing the vehicle but before the vehicle's original warranty expired, or 4)  paid less for the vehicle because of the exposure to the Leaking Sunroof Defect.

71.     As a direct and proximate result of Defendant's conduct as herein alleged, Plaintiff and the class members are entitled to recover damages in an amount according to proof at trial.

72.     As a direct and proximate result of Defendant's conduct as herein alleged, Plaintiff and the class members are entitled to injunctive relief where appropriate and the court may award, in addition to other relief, reasonable attorney's fees as provided by 815 ILS 505/10a, in an amount according to proof.

73.     The actions and conduct of Defendant as herein alleged was implemented, authorized, approved, ratified, and/or directed by managing agents of Defendant.

## VI.

### SECOND CAUSE OF ACTION
### (Fraudulent Concealment)

74.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

75.    Defendant engaged in fraud by concealing from purchasers of Class Vehicles during the Class Vehicles' original warranty period the existence of the Leaking Sunroof Defect and the fact water intrusion into the vehicle caused by the defect was known by Defendant to compromise the proper operation of the vehicle's SDM module resulting the risk of deployment of the vehicle's air bag system which forseeably results in personal injury, as well as compromises proper function of the vehicle's CUE and OnStar safety system, and other damages to their vehicles.

76.    Based on Plaintiff's and all other Class Members' foreseeable exposure to personal injuries from deployment of the air bags caused by water damage to the EDM module, improper function of the vehicle's OnStar safety system, and mold growth in wet carpet and saturation of the sound deadener, all resulting from the Leaking Sunroof Defect, Defendant GM owed all purchasers of Class Vehicles, including Plaintiff, a duty to disclose the Leaking Sunroof Defect at the time of purchase or as soon thereafter when Defendant was in possession of vehicle registration information including the owner's name, address, telephone number,

vehicle identification number (VIN), date of purchase or transfer of title, service history of the vehicle to confirm whether the vehicle had previously experienced the Leaking Sunroof Defect and/or been inspected and/or repaired, and the milage and existing warranty information for each Class Vehicle.

77.     Defendant had actual knowledge of the existence of the Leaking Sunroof Defect in Plaintiff's and the Class Members' vehicles as early as August 2013 - nearly three years before Plaintiff purchased her vehicle in December 2016 and while the vehicle was still under the original warranty - when on or about August 30, 2013, Defendant issued Service Bulletin #3619032(Exhibit 2 hereto), and again in September 2013, when Defendant issued Service Bulletin SB-10052823-4367 (Exhibit 3 hereto).

78.     Notwithstanding Defendant's actual knowledge the Leaking Sunroof Defect caused water intrusion into the passenger compartment of the Class Vehicles, including causing wet and/or saturated carpet, and Defendant also had actual knowledge that "if any water enters the vehicle up to the level of the carpet or higher and soaks the carpet" the SDM module which controls the vehicle's airbag system could be activated and cause deployment of the air bag(s) resulting in personal injury (see, Exhibit 1 hereto), Defendant chose to conceal these material facts from Plaintiff and all other Class Members.

79.     Instead of disclosing the Leaking Sunroof Defect and informing Plaintiff and all other Class Members of the defect and the risk of personal injury caused by the defect, Defendant chose to sit back, take no action, cross its fingers and wait for the original warranty period to expire so that Defendant would then have a plausible, even if morally reprehensible, basis to decline to cover under warranty the cost of inspection and/or repairs for damages caused by the Leaking Sunroof Defect.

80.     Defendant elected to engage in this practice in order to put its profits over the safety of its customers.

81.     Had Plaintiff been informed and/or made aware prior to May 2020 when she first experienced the Leaking Sunroof Defect that her vehicle was in the class of vehicles which were known to experience the Leaking Sunroof Defect, she would have either 1) not purchased the vehicle at all, 2) requested/demanded the vehicle be inspected and/or repaired before purchasing the vehicle, 3) had the vehicle inspected and/or repaired before the vehicle's original warranty expired, or 4)  paid less for the vehicle.

82.     As a result of Defendant's fraudulent practice as herein alleged Plaintiff and the class members were forced to pay out of their own pocket the cost for inspection and/or repair of damage caused by the Leaking Sunroof Defect.

83.     As a result of Defendant's fraudulent practice as herein alleged Plaintiff and the class members were forced to pay out of their own pocket the cost for inspection and/or repair of damage caused by the Leaking Sunroof Defect and has thus experience out of pocket losses.

84.     As a result of Defendant's fraudulent practice as herein alleged Plaintiff and the class members paid more for their vehicle(s) than it was worth because of the exposure to the Leaking Sunroof Defect and thus Plaintiff and the class members did not receive the benefit of the bargain.

85.     As a direct and proximate result of Defendant's conduct as herein alleged, Plaintiff and the class members are entitled to recover actual damages all in an amount according to proof at trial.

86.     The actions and conduct of Defendant as herein alleged was implemented, authorized, approved, ratified, and/or directed by managing agents of Defendant.

87.     Defendant's conduct as herein alleged was fraudulent, malicious and/or oppressive and done with a conscious disregard for the rights and/or safety of Plaintiff and the class members.  Plaintiff and the class members are therefor entitled to an award of punitive or exemplary damages against Defendant in an amount according to proof sufficient to punish and/or make an example of

Defendant and to deter Defendant and other similar businesses from engaging in similar conduct in the future.

## VII.

### THIRD CAUSE OF ACTION
(**Unjust Enrichment**)

88.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

89.     Defendant has unjustly benefitted and been enriched by concealing from Plaintiff and purchasers of Class Vehicles during the original warranty period the existence of the Leaking Sunroof Defect therefore enriching Defendant by virtue of its not having to pay under warranty at its own expense the cost to inspect and/or repair Class Vehicles in which the Leaking Sunroof Defect was present.

90.     Defendant's actions resulted in Plaintiffs and the Class Members paying out of their own pockets the costs of inspection and repair of the Leaking Sunroof Defect in the Class Vehicles.

91.     Equity and good conscience dictate and require Defendant restore to Plaintiffs and the Class Members the monies they have paid out of to repair the Leaking Sunroof Defect in the Class Vehicles expenses which should have been covered by Defendant and at no cost to Plaintiffs and the Class Members.

## VIII.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for relief as to each cause of action set forth herein as follows:

1.     Certification of the action as a class action with respect to Plaintiff's claims for injunctive relief and claims for damages, and appointment of Plaintiff as the Class Representative and her counsel of record as Class Counsel;

2.     An award of damages in the amount of monies already paid by Plaintiff and Class members for the cost of inspecting, repairing and/or replacing the Leaking Sunroof Defect on the Class Vehicles;

3.     For damages for Defendant's fraudulent concealment in an amount according to proof;

4.     For restitution to Plaintiffs, individually and to all class members, in an amount according to proof at trial;

5.     For injunctive relief;

6.     For an award exemplary or punitive damages in an amount according to proof;

7.     For an award of reasonable attorney's fees in an amount according to proof pursuant to statute;

8.     For costs of suit;

34

9.     Pre- and post-judgment interest on any amounts awarded; and

10.    Such other relief as the Court deems fair, just equitable and proper.

By,

Dated: July 15, 2020          /s/ Robert A. Waller, Jr.
                              ROBERT A. WALLER, JR.
                              LAW OFFICE OF ROBERT A. WALLER, JR.
                              P.O. Box 999
                              Cardiff-by-the-Sea, California 92007
                              Telephone:  (760) 753-3118
                              Facsimile:  (760) 753-3206
                              Email:      robert@robertwallerlaw.com
                              Attorney for Plaintiff and the Class

## IX.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all class members, hereby demands trial of her/their claims by jury to the extent authorized by law.

By,

Dated: July 15, 2020          /s/ Robert A. Waller, Jr.
                              ROBERT A. WALLER, JR.
                              LAW OFFICE OF ROBERT A. WALLER, JR.
                              P.O. Box 999
                              Cardiff-by-the-Sea, California 92007
                              Telephone:  (760) 753-3118
                              Facsimile:  (760) 753-3206
                              Email:      robert@robertwallerlaw.com
                              Attorney for Plaintiff and the Class

35

EXHIBIT 1

2013 Cadillac Truck SRX FWD V6-3.6L

Vehicle > Windows and Glass > Service Precautions > Technician Safety Information

## STATIONARY WINDOW WATERLEAK REPAIR

**Stationary Window Waterleak Repair**

**Warning**

If any water enters the vehicle interior up to the level of the carpet or higher and soaks the carpet, the sensing and diagnostic module (SDM) and the SDM harness connector may need to be replaced. The SDM could be activated when powered, which could cause deployment of the air bag(s) and result in personal injury. Before attempting these procedures, the SIR system must be disabled. Refer to Disabling the SIR System.

With the ignition OFF, inspect the SDM mounting area, including the carpet. If any significant soaking or evidence of significant soaking is detected, you must perform the following tasks:

1. Remove all water.

2. Repair the water damage.

3. Replace the SDM harness connector.

4. Replace the SDM.

Failure to follow these tasks could result in possible air bag deployment, personal injury, or otherwise unneeded SIR system repairs.

1. If the floor carpet is wet refer to Floor Carpet Drying See: Carpet > Procedures > Floor Carpet Drying.

2. Remove the trim moldings or the headliner in order to repair the leak, if needed.

3. Determine the source of water entry.

4. If water is leaking at the edge of the windshield, reseal the windshield using Urethane Adhesive Systems which meet GM Specification GM 3651G.

5. If water leaks into the vehicle at the sides of the stationary windows, reseal the window using Urethane Adhesive Systems which meet GM Specification GM 3651G.



EXHIBIT 2

Document ID: 3610923

# #PI0044D: Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013)

**Subject:** Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet

**Models:** 2010-2013 Cadillac SRX



This PI has been revised to update the Condition/Concern, Recommendation/Instructions sections and update the Warranty Information with the Global Labor Code (GLC). Please discard PI0044C.

## Condition/Concern

Some customers may comment on seeing a water leak in the driver or front passenger floor area and/or finding the front carpet wet.

The most common causes of this concern are:

- There may be a void in the cowl seam sealer, in the corners below the sunroof drain hose grommets.
- The sunroof front drain hose grommet(s) may not be connected or fully seated in the cowl panel or at the sunroof frame spigot.
- The sunroof front drain hoses are mis-routed or are too short, and display a higher level of tension. This higher tension may tend to cause a future disconnect or unseating of the grommet.

## Recommendation/Instructions

**Complete the following inspection procedure before doing any repairs.**

**Water Test Inspection Procedure**

1. Park the vehicle on a level surface.
2. Fully open the sunroof window.
3. Fill an appropriate container with approximately 16 ounces (473 ml) of water.



4. Pour water into the outboard front corner of the sunroof frame on one side of the
   vehicle, and immediately inspect the area rearward of the front tire for water flowing
   out onto the floor surface.

5. Repeat steps 3 and 4 on the opposite side.

   ◦ If water is properly flowing out the front drain hoses, jump ahead to the "Seal
     Cowl Seam Repair Procedure" section below and complete the repair steps listed.

   ◦ If water is NOT properly flowing out the front drain hoses, first replace BOTH
     sunroof front drain hoses following the repair steps below, then continue ahead
     and complete the "Seal Cowl Seam Repair Procedure" repair steps.

**Left and Right Sunroof Front Drain Hose Replacement Procedure**

**Note:** Refer to the GM Parts Catalog for the appropriate front drain hose part numbers.



1. Starting on the left or right side, remove the windshield garnish molding from the A-
   pillar by pulling gently from the top to disengage the attachment clip. Detach the
   rubber stop (1) on the tether clip from the molding and disconnect the speaker wiring
   harness (2).

© 2013 General Motors.  All rights reserved.



2. Remove the sunshade. Refer to Sunshade Replacement in SI.



3. Remove the front assist handle. Refer to Front Assist Handle Replacement in SI.



4. Pull the front corner of the headliner downward to access the drain hose and sunroof drain spigot connection, circled above.



5. Disengage the sunroof drain hose from the attachment points on the windshield pillar (1).

6. Disconnect the front sunroof drain hose from the sunroof drain spigot (2).

7. Disconnect the drain hose and grommet (3) from the cowl panel.

8. Remove the drain hose (4) from the vehicle.



**Important:** Verify proper engagement of the grommet to cowl panel to prevent a water leak.

9. Using a long, thin suitable tool (1), connect the grommet end of the hose (2) to the cowl panel by pushing the grommet into its hole.



10. Connect the front sunroof drain hose to the sunroof drain spigot (2).

11. Connect the sunroof drain hose to the attachment points on the windshield pillar (1).

12. Repeat steps 1-11 on the opposite side of the vehicle.

13. Water test the vehicle before installing the headliner and trim.

14. Reposition the headliner and reinstall the left and right front assist handles. Refer to Front Assist Handle Replacement in SI.

15. Reinstall the left and right sunshades. Refer to Sunshade Replacement in SI.

16. Reattach the tether clips and reconnect the speaker wiring harness to the left and right windshield garnish moldings.

17. Ensuring the retaining tabs are fully seated, position the left and right garnish to the A-pillars and push securely in place.

**Seal Cowl Seam Repair Procedure**

Apply sealer to the front cowl seam following the steps below:



1. Remove the air inlet grille panel. Refer to Air Inlet Grille Panel Replacement in SI.



2. Inspect that the front sunroof drain hoses and grommets (1) are connected and fully seated to the cowl on both sides.
3. Water test the cowl by running water along the cowl seam (shown in the graphic above), which runs across the front of the vehicle.
4. If water drips are evident, inspect the seam for voids (2) in the sealer. Clean the affected area and seal the void with Kent High Tech™ Clear Seam Sealer, P/N P10200 (5 oz tube), or equivalent.
5. Reinstall the air inlet grille panel. Refer to Air Inlet Grille Panel Replacement in SI.

**Parts Information**

Contact Kent Automotive at 1–888–YES-Kent or online at www.kent-automotive.com.

| Part Number | Description |
|---|---|
| P10200 | Kent High Tech™ Clear |

## Warranty Information

For vehicles repaired under warranty, use:

| Labor Operation | Description | Labor Time |
|---|---|---|
| 6080058* | R & R Air Inlet Grille Panel – Apply Sealer to Cowl Seam | 0.6 hr |
| Add | Replace Both Sunroof Front Drain Hoses | 1.4 hrs |
| *This is a unique labor operation for bulletin use only. It will not be published in the Labor Time Guide. | | |

GM bulletins are intended for use by professional technicians, NOT a "do-it-yourselfer". They are written to inform these technicians of conditions that may occur on some vehicles, or to provide information that could assist in the proper service of a vehicle. Properly trained technicians have the equipment, tools, safety instructions, and know-how to do a job properly and safely. If a condition is described, DO NOT assume that the bulletin applies to your vehicle, or that your vehicle will have that condition. See your GM dealer for information on whether your vehicle may benefit from the information.



WE SUPPORT VOLUNTARY TECHNICIAN CERTIFICATION



EXHIBIT 3

*SB-10052823-4367*



## Service Bulletin

File in Section:   -

Bulletin No.:   PI0044D

Date:   September, 2013

# PRELIMINARY INFORMATION

**Subject:**   Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet

**Models:**   2010-2013 Cadillac SRX

> **This PI has been revised to update the Condition/Concern, Recommendation/Instructions sections and update the Warranty Information with the Global Labor Code (GLC). Please discard PI0044C.**

## Condition/Concern

Some customers may comment on seeing a water leak in the driver or front passenger floor area and/or finding the front carpet wet.

The most common causes of this concern are:

- There may be a void in the cowl seam sealer, in the corners below the sunroof drain hose grommets.
- The sunroof front drain hose grommet(s) may not be connected or fully seated in the cowl panel or at the sunroof frame spigot.
- The sunroof front drain hoses are mis-routed or are too short, and display a higher level of tension. This higher tension may tend to cause a future disconnect or unseating of the grommet.

## Recommendation/Instructions

**Complete the following inspection procedure before doing any repairs.**

### Water Test Inspection Procedure

1. Park the vehicle on a level surface.
2. Fully open the sunroof window.
3. Fill an appropriate container with approximately 16 ounces (473 ml) of water.



3610899

4. Pour water into the outboard front corner of the sunroof frame on one side of the vehicle, and immediately inspect the area rearward of the front tire for water flowing out onto the floor surface.

5. Repeat steps 3 and 4 on the opposite side.

   - If water is properly flowing out the front drain hoses, jump ahead to the "Seal Cowl Seam Repair Procedure" section below and complete the repair steps listed.

   - If water is NOT properly flowing out the front drain hoses, first replace BOTH sunroof front drain hoses following the repair steps below, then continue ahead and complete the "Seal Cowl Seam Repair Procedure" repair steps.

**Left and Right Sunroof Front Drain Hose Replacement Procedure**

**Note:** Refer to the GM Parts Catalog for the appropriate front drain hose part numbers.



3610902

1. Starting on the left or right side, remove the windshield garnish molding from the A-pillar by pulling gently from the top to disengage the attachment clip. Detach the rubber stop (1) on the tether clip from the molding and disconnect the speaker wiring harness (2).



3610903

2. Remove the sunshade. Refer to Sunshade Replacement in SI.



3610906

3.  Remove the front assist handle. Refer to Front Assist Handle Replacement in SI.



3610910

4.  Pull the front corner of the headliner downward to access the drain hose and sunroof drain spigot connection, circled above.



2653136

5.  Disengage the sunroof drain hose from the attachment points on the windshield pillar (1).
6.  Disconnect the front sunroof drain hose from the sunroof drain spigot (2).
7.  Disconnect the drain hose and grommet (3) from the cowl panel.
8.  Remove the drain hose (4) from the vehicle.



3610909

**Important:**  Verify proper engagement of the grommet to cowl panel to prevent a water leak.

9.  Using a long, thin suitable tool (1), connect the grommet end of the hose (2) to the cowl panel by pushing the grommet into its hole.



2653138

10. Connect the front sunroof drain hose to the sunroof drain spigot (2).
11. Connect the sunroof drain hose to the attachment points on the windshield pillar (1).
12. Repeat steps 1-11 on the opposite side of the vehicle.
13. Water test the vehicle before installing the headliner and trim.
14. Reposition the headliner and reinstall the left and right front assist handles. Refer to Front Assist Handle Replacement in SI.
15. Reinstall the left and right sunshades. Refer to Sunshade Replacement in SI.
16. Reattach the tether clips and reconnect the speaker wiring harness to the left and right windshield garnish moldings.
17. Ensuring the retaining tabs are fully seated, position the left and right garnish to the A-pillars and push securely in place.

**Seal Cowl Seam Repair Procedure**

Apply sealer to the front cowl seam following the steps below:



2400317

1. Remove the air inlet grille panel. Refer to Air Inlet Grille Panel Replacement in SI.



3236000

2. Inspect that the front sunroof drain hoses and grommets (1) are connected and fully seated to the cowl on both sides.

3. Water test the cowl by running water along the cowl seam (shown in the graphic above), which runs across the front of the vehicle.

4. If water drips are evident, inspect the seam for voids (2) in the sealer. Clean the affected area and seal the void with Kent High Tech™ Clear Seam Sealer, P/N P10200 (5 oz tube), or equivalent.

5. Reinstall the air inlet grille panel. Refer to Air Inlet Grille Panel Replacement in SI.

## Parts Information

Contact Kent Automotive at 1–888–YES-Kent or online at www.kent-automotive.com.

| Part Number | Description |
|---|---|
| P10200 | Kent High Tech™ Clear |

## Warranty Information

For vehicles repaired under warranty, use:

| Labor Operation | Description | Labor Time |
|---|---|---|
| 6080058* | R & R Air Inlet Grille Panel – Apply Sealer to Cowl Seam | 0.6 hr |
| Add | Replace Both Sunroof Front Drain Hoses | 1.4 hrs |
| *This is a unique labor operation for bulletin use only. It will not be published in the Labor Time Guide. | | |